# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| KATHLEEN C., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. CV 17-05796-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Kathleen C. ("Plaintiff") appeals the Commissioner's final decision denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] For the reasons discussed below, the Commissioner's decision is reversed, and this matter is remanded.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## I. BACKGROUND

In 2013, Plaintiff filed applications for DIB and SSI, alleging disability beginning on June 1, 2011. See Dkt. 16, Administrative Record ("AR") 160-77. After Plaintiff's applications were denied at the initial level, she requested a hearing before an Administrative Law Judge ("ALJ"). See AR 101-02, 118-19. A hearing was held on March 8, 2016, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. See AR 36-72. On May 5, 2016, the ALJ issued an unfavorable decision. See AR 19-32.

The ALJ determined that Plaintiff had the severe impairment of affective disorder/bipolar disorder II, but found that Plaintiff's impairment did not meet or medically equal the severity of a listed impairment. See AR 25-26. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: perform simple, routine and repetitive tasks but not at a production rate pace (e.g. no assembly line work); have occasional interactions with the public; and tolerate few changes in a routine work setting (i.e. generally performing the same work every day).

AR 27. Based on the VE's testimony, the ALJ found that Plaintiff could work as an industrial cleaner, stores laborer, or hospital cleaner. See AR 31-32. He therefore concluded that Plaintiff was not disabled. See AR 32.

On June 12, 2017, the Appeal Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. Plaintiff then sought review by this Court. See Dkt. 1.

## II. DISCUSSION

The parties dispute whether the ALJ properly considered the opinion of examining psychiatrist Dr. Larisa Levin and properly assessed Plaintiff's credibility. See Dkt. 26, Joint Stipulation ("JS") at 4.

A.  **Examining Psychiatrist Opinion**

   1.  **Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c);[2] Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a nonexamining physician. See Lester, 81 F.3d at 830. When a treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight

---

[2] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly, the Court applies the versions of 20 C.F.R. §§ 404.1527 and 416.927 that were in effect at the time of the ALJ's May 2016 decision.

accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. See 20 C.F.R. §§ 404.1527(c)(2)-(6); 416.927(c)(2)-(6).

### 2. Relevant Factual Background

In May 2014, Dr. Levin conducted a psychiatric evaluation of Plaintiff. See AR 280-86. Dr. Levin found that Plaintiff had "diminished" concentration and calculation skills, could not perform serial sevens, had difficulty spelling, and had dysphoric mood with anxious affect. AR 283-84. Dr. Levin assessed moderate impairments in Plaintiff's abilities to understand, remember, and carry out simple one or two-step job instructions; "do detailed and complex instructions"; relate and interact with supervisors, coworkers, and the public; maintain concentration and attention, persistence and pace; associate with day-to-day work activity, including attendance and safety; adapt to the stresses common to a normal work environment; maintain regular attendance in the workplace and perform work activities on a consistent basis; and perform work activities without special or additional supervision. AR 284.

The ALJ summarized Dr. Levin's findings, noting that Dr. Levin had found Plaintiff moderately impaired "in her ability to perform all work-related mental and social tasks." AR 25-26, 29. Although the ALJ did not assign any particular weight to Dr. Levin's opinion, he expressed that the RFC was consistent with Dr. Levin's findings. See AR 30.

3. **Analysis**

Plaintiff argues that the ALJ failed to account for the limitations assessed by Dr. Levin in formulating the RFC.[3] See JS at 14-16. With regard to some of Dr. Levin's opined limitations, the Court agrees.

By limiting Plaintiff to "simple, routine and repetitive tasks . . . not at a production rate pace" with "few changes in a routine work setting (i.e. generally performing the same work every day)," the ALJ accommodated the moderate limitations found by Dr. Levin in maintaining concentration and attention, persistence, and pace, adapting to the stresses common to a normal work environment, maintaining regular attendance in the workplace and performing work activities on a consistent basis, performing work activities without special or additional supervision, and "doi[ng] detailed and complex instructions." AR 285; see Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (finding that ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated the examining and reviewing physicians' findings that claimant had "slow pace" and "several moderate limitations in other mental areas"); Payne v. Astrue, No. 09-06141, 2010 WL 4671576, at *3-4 (C.D. Cal. Nov. 8, 2010) (holding that RFC limiting claimant to simple,

---

[3] Referring to the ALJ's assertions that Plaintiff "generally performed well" and exhibited "no significant deficits" during Dr. Levin's consultative examination, Plaintiff also argues that the ALJ "did not properly summarize" Dr. Levin's findings. JS at 8-9. The Court disagrees. Although Dr. Levin observed "diminished" concentration and calculation skills, inability to perform serial sevens, difficulty spelling, and dysphoric mood, Dr. Levin's other findings were unremarkable, including that Plaintiff was cooperative, had normal speech and grossly intact short-term memory, could perform serial threes, exhibited intact abstractions and fair insight and judgment, had appropriate fund of knowledge, had no looseness of association, and showed no signs of auditory or visual hallucinations. See AR 283-84. As the ALJ noted, Dr. Levin assessed "no more than moderate" limitations in any functional area. AR 29, 285.

repetitive tasks properly accounted for moderate limitations in abilities to "remember, understand, and carry out complex instructions; . . . maintain concentration and attention on a persistent basis; adapt to the stresses common to a normal work environment; maintain regular attendance in the workplace; perform work activities on a consistent basis; and perform work activities without special or additional supervision"); Coats v. Colvin, No. 14-00712, 2015 WL 5813333, at *22 (E.D. Cal. Sept. 30, 2015) ("Courts within the Ninth Circuit have . . . concluded that a claimant's low tolerance of stress is encompassed in a limitation 'to simple, repetitive tasks' and work 'that does not require meeting fast-paced quotas.'")

But the ALJ's RFC did not account for Dr. Levin's opinion that Plaintiff was moderately limited in her abilities to understand, remember, and carry out simple one- or two-step job instructions and to associate with day-to-day work activity, including attendance and safety. See Munoz v. Colvin, No. 15-00261, 2015 WL 5971537, at *1-2 (C.D. Cal. Oct. 14, 2015) (remanding where ALJ limited claimant to simple, repetitive work in a low-stress environment and consultative examiner found claimant moderately impaired in "understanding, remembering and carrying out simple 1-to 2-step job instructions, and associating with day-to-day work activity, including attendance and safety"). Nor did the ALJ analyze whether these limitations conflicted with the RFC or provide any specific or legitimate reasons for rejecting these particular limitations. Accordingly, the ALJ erred in failing to adequately consider these limitations. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Moreover, the ALJ arguably erred in only limiting Plaintiff's contact with the general public despite Dr. Levin's opinion that she was moderately limited in her ability to relate and interact with supervisors and coworkers as well as the public. See Palleschi v. Colvin, No. 15-04204, 2016 WL 7261400, at *5 (C.D. Cal. Dec. 15, 2016) (holding that RFC limiting claimant to "occasional contact with the public and coworkers" did not account for claimant's moderate limitations in ability to interact with supervisors); Gentry v. Colvin, No. 12-01825, 2013 WL 6185170, at *16 (E.D. Cal. Nov. 26, 2013) ("[T]he limitation on public contact that the ALJ incorporated into the RFC here does not subsume a limitation on interactions with co-workers and supervisors.").

Nevertheless, any such error regarding the ALJ's consideration of Plaintiff's social limitation was harmless because it was inconsequential to the ALJ's ultimate nondisability determination. See Stout v. Comm'r, Soc. Sec. Admin, 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ found that Plaintiff was capable of performing the jobs of industrial cleaner, Dictionary of Occupational Titles ("DOT") 381.687-018; stores labor, DOT 922.687-058; and hospital cleaner, DOT 323.687-010.[4] The descriptions in the DOT for each of these jobs indicate that dealing with people is "not significant." See DOT 381.687-018, 1991 WL 673258 (indicating that job involves taking instructions or helping people but "not significant[ly]"); DOT 922.687-058, 1991 WL 688132 (same); DOT 323.687-010, 1991 WL 672782 (same). Additionally, the

---

[4] Both the ALJ and the VE incorrectly referred to DOT 323.687-018 as the occupational code for hospital cleaner. See AR 32, 70. Rather, DOT 323.687-018 refers to the occupation of housecleaner, classified at the heavy exertional range. See 1991 WL 672790. Because the DOT and the VE's testimony indicate that hospital cleaner was classified at the medium exertional range, the Court concludes that the VE and the ALJ intended to refer to hospital cleaner. See AR 70; DOT 323.687-010, 1991 WL 672782.

fifth digit of the DOT occupational code for all three jobs is "8," meaning that these jobs involve the lowest level of complexity in relating to people. See DOT, Parts of the Occupational Definition, 1991 WL 645965 (explaining that the fifth digit of each occupational code reflects the level of interaction with people necessary for that particular job, with "8" referring to "taking-instructions-helping" and signifying the lowest level of complexity). Moreover, the VE testified that all three jobs were unskilled, which indicates limited interaction with people. See AR 70; SSR 85-15, 1985 WL 56857, at *4 (explaining that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people"). Therefore, to the extent that the ALJ erred in failing to limit Plaintiff's contact with coworkers and supervisors, it was inconsequential to the outcome of the ALJ's final disability determination. See Hann v. Colvin, No. 12-06234, 2014 WL 1382063, at *23 (N.D. Cal. Mar. 28, 2014) (finding ALJ's error in omitting limitation in contact with supervisors harmless where jobs identified by VE involved "the lowest level of interaction with people" according to their DOT occupational codes).

In contrast, however, the ALJ's error in failing to incorporate or properly reject limitations in Plaintiff's abilities to understand, remember, and carry out simple one- or two-step job instructions and to associate with day-to-day work activity, including attendance and safety, was not harmless. Nothing in the DOT allows the Court to conclude that had the ALJ properly considered these limitations, the ultimate disability determination would have remained unchanged. Indeed, "[t]he basic mental demands of . . . unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions" and "[a] substantial loss of ability" in this area "would severely limit the potential occupational base," thereby justifying a finding of disability. SSR 85-15, 1985 WL 56857, at *4. Because these errors were not harmless, remand is warranted on this ground.

## B. Plaintiff's Symptom Testimony

### 1. Applicable Law

The Court engages in a two-step analysis to review the ALJ's evaluation of the plaintiff's symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. See id. If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted). The ALJ may consider, among other factors, a plaintiff's reputation for truthfulness, inconsistencies in his testimony, inadequately explained failures to seek treatment or to follow a prescribed course of treatment, his work record, and his daily activities. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended); Smolen v. Chater, 80 F.3d 1273, 1283-84, 1284 n.8 (9th Cir. 1996). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second[ ]guessing." Thomas, 278 F.3d at 959.

### 2. Relevant Factual Background

At the hearing, Plaintiff testified that she suffered from severe depression and could not leave her house without having a panic attack. See AR 51-52. Plaintiff testified that her symptoms began after a suicide attempt four years earlier. See AR 52. Plaintiff stated that she lived with her elderly parents, did not go outside alone, required medication to leave the house, and could not go

outside often. See AR 44-45, 56-57. Plaintiff stated that she helped her mother with cooking, chores, taking care of their cats, and with grocery shopping "[e]very great once in a while." AR 51. In November 2013, Plaintiff reported difficulties with memory, understanding, concentrating, following instructions, and getting along with others. See AR 200. She stated that she tried to go out at least once a day but required medication, that she needed someone to accompany her outside, that she helped her mother was cooking, cleaning, and taking care of the pets, and that she went grocery shopping with her mother once a week. See AR 195-99. In May 2014, Plaintiff reported to Dr. Levin that she experienced "an inability to focus and concentrate" as well as "racing thoughts and frequent episodes of anger." AR 281.

The ALJ found Plaintiff's symptom testimony "not wholly credible." AR 30. Noting that Plaintiff's medical records revealed "large gaps in treatment" and "frequently missed appointments," that Plaintiff "generally performed well upon mental status testing," that there were no records documenting Plaintiff's alleged onset date, suicide attempts, or a car accident which allegedly exacerbated her mental health symptoms, and that the records "frequently referenced her desire and efforts to obtain various public benefits, rather than reporting significant mental health symptoms or displaying signs of chronic psychiatric problems," the ALJ concluded that the objective medical evidence did not support Plaintiff's allegations of disability. AR 28-29. Finally, the ALJ also reasoned that Plaintiff provided inconsistent statements about her use of alcohol and other substances, daily activities, the effect of her medication, and the reason she stopped working. See AR 29-30.

### 3. Analysis

The ALJ provided clear and convincing reasons for finding that Plaintiff's subjective symptom testimony was not entirely credible. First, the objective medical evidence did not support the degree of symptoms Plaintiff

alleged. As the ALJ noted, Plaintiff alleged disability beginning in June 2011, but the earliest treatment records are dated June 6, 2012. See AR 292-96. At this initial assessment with the Los Angeles County Department of Mental Health, she displayed dysphoric mood and labile affect, but was oriented, had unimpaired memory and average fund of knowledge, had no apparent disturbances of perception, thought process or content, showed intact concentration and only minimally impaired judgment and insight, displayed no behavioral disturbances, and denied suicidal and homicidal ideations. See AR 295. As explained in Sections II.A.2-3, supra, Dr. Levine's consultative exam showed similarly unremarkable findings, including grossly intact short-term memory, lack of agitation, and the ability to follow three-step commands, and although her concentration was diminished, Plaintiff could perform serial threes. See AR 283-84. Although one progress note from January 2016 indicated hyperactivity, rambling speech, disorganized thinking, racing thoughts, and that Plaintiff's concentration was easily distracted, see AR 378, and several treatment notes reflected anxious or dysphoric mood, see AR 319, 321, 328, 355, 376, 391-92, 398, 407, the bulk of Plaintiff's treatment notes were unremarkable, including findings that Plaintiff was alert and oriented, see AR 315, 317, 321, 328, 330, 332, 334, 340, 343, 350, 355, 376, 386, 392, 395, 398, was in no acute distress, see AR 315, 392, 398, 407, exhibited regular speech, see AR 328, 386, 392, 395, 398, 400, 407, had "OK" memory, see AR 351, denied racing thoughts, see AR 385, 391, 397-98, 407, had average knowledge, see AR 392, 398, 407, and had euthymic, "OK" or "better" mood, see AR 332, 335, 340, 345, 350, 385-86, 395, 400. Although objective medical evidence cannot be the only basis for discrediting a claimant's subjective symptom testimony, the ALJ permissibly relied on this evidence as one reason to

11

discount Plaintiff's allegations.[5] See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2009) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Furthermore, the ALJ permissibly discounted Plaintiff's symptom testimony due to her inconsistent statements about alcohol and drug use. At the March 2016 hearing, Plaintiff testified that she had last used opioids or cocaine 10 or 20 years ago, and that she had had issues with alcohol "in the past." AR 60-63. Plaintiff told Dr. Levin in May 2014 that she had been clean from drug abuse, including addiction to Vicodin and Valium, and sober from alcohol for 10 years. See AR 281-82. In contrast, a progress note from September 2012 indicated that Plaintiff had been sober from alcohol and drugs for only 2 years. See AR 307. Furthermore, in June 2012, Plaintiff reported that her alcohol intake had increased since her car accident on May 21, 2012, that she had stopped Vicodin only 1.5 weeks earlier, and that she still used Valium. See AR 293, 296. This inconsistency surrounding Plaintiff's sobriety date constituted a clear and convincing reason to discredit her subjective

---

[5] In making this determination, the Court declines to address Plaintiff's gaps in mental health treatment or missed appointments, as the Ninth Circuit has held that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted). Nor does the Court consider the discussion in the medical records of Plaintiff's efforts to receive benefits, as these notations do not seem particularly probative and the ALJ did not imply that Plaintiff was motivated by secondary gain. See AR 29. Finally, the Court disagrees with the ALJ regarding the lack of documentation of Plaintiff's suicide attempts, given that several treatment notes and Dr. Levin's report discuss Plaintiff's past suicide attempts. See AR 281, 288-89, 292, 310, 314, 324, 365, 376.

symptom testimony. See Thomas, 278 F.3d at 959 (holding that lack of candor about substance abuse was a valid basis for adverse credibility determination).

Because the record is less than clear concerning Plaintiff's response to medication, her daily activities, and her reasoning for stopping work, the Court declines to affirm the ALJ's credibility finding on these grounds. To the extent that the ALJ erred in relying on these reasons, any such error was harmless because substantial evidence supported the ALJ's remaining reasons for the adverse credibility determination. See Carmickle, 533 F.3d at 1162 (finding harmless error where ALJ relied on two invalid reasons for adverse credibility determination but remaining reasons were valid and supported by substantial evidence).

On appellate review, the Court's role is not to reweigh the evidence supporting or undermining Plaintiff's credibility. Instead, the Court merely asks whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's subjective testimony. See Smolen, 80 F.3d at 1284. When clear and convincing reasons are given, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959; see also Fair, 885 F.2d at 604. Having relied on the objective medical evidence and Plaintiff's inconsistent statements about her alcohol and substance use, the ALJ provided sufficiently specific, clear and convincing reasons for discounting Plaintiff's subjective complaints about the severity of her mental impairment. Thus, reversal on these grounds is not warranted.

**C.** **Remand Is Warranted**

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at

1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ to properly consider Dr. Levin's opinion and conduct such other proceedings as are warranted.

## III. CONCLUSION

For the reasons stated above, the conclusion of the Social Security Commissioner is reversed and the action is remanded for further proceedings.

Date: March 1, 2019

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

14